## The New Haven Clock Company

### *v.*

### D. H. Kochersperger *et al.*

*Opinion filed October 24, 1898.*

1. Taxes—*statutory provisions concerning assessment are intended to afford tax-payers adequate protection.* The statutory provisions concerning the tax-payer's right to have the assessor's valuation of his property for taxation reviewed by the board of review or the county board, are intended to provide adequate protection against fraudulent or oppressive assessments.

2. Same—*assessment can be questioned only for fraud or want of jurisdiction.* The assessor and boards of review are invested by statute with the power to fix the valuation of taxable property, and their decisions in that regard can be questioned in the courts only for fraud or want of jurisdiction.

3. Same—*equity has power to grant relief against a fraudulent assessment.* While it is not within the power of equity to supervise the honest judgment of an assessor as to the valuation of property, equity will interfere if such valuation is fixed from an improper motive and in disregard of duty, unless the complaining tax-payer has waived his right to relief.

4. Same—*when equity will not grant relief against a fraudulent assessment.* Equity will not grant relief against a fraudulent assessment of taxable property by the assessor where the owner has failed to insist upon a legal remedy which would probably have afforded him complete relief.

5. Same—*refusal of county board to review assessment is not ground for enjoining tax.* Upon the neglect or refusal of the county board to review an alleged fraudulent assessment of taxable property, the

owner's remedy is *mandamus* to compel the board to act, and he must pursue that remedy before seeking relief by injunction.

6. SAME—*lack of time is not an excuse for not pursuing legal remedy.* The fact that a property owner believes he will be unable to procure a writ of *mandamus* to compel the county board to review his alleged fraudulent assessment before he will be compelled to pay the tax, is not an excuse for failing to apply for the writ and seeking to enjoin the tax in the first instance.

7. INJUNCTION—*acts done after court acquires jurisdiction are subject to court's power.* The forced payment of a tax after the court has acquired jurisdiction of a bill to enjoin the same is subject to the power of the court to compel restoration, even though no preliminary injunction is granted; and such payment cannot be availed of as a defense to the bill upon the ground that, the tax having been paid, there was nothing to enjoin.

MAGRUDER, J., dissenting.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

EDGAR BRONSON TOLMAN, and HARVEY MITCHELL HARPER, for plaintiffs in error:

The statute constituting boards of review, and prescribing the rights of objectors and the duties of such tribunals, is mandatory and imperative. *Hough* v. *Hastings,* 18 Ill. 317.

Such boards are authorized to raise or reduce assessments, so that just, proportionate and uniform taxation shall prevail. *People* v. *Lots in Ashley,* 122 Ill. 307; *Humphreys* v. *Nelson,* 115 id. 51.

Acts done or omitted to be done by public officials which operate to deprive the citizen of a clear legal right render subsequent proceedings void. *Hough* v. *Hastings,* 18 Ill. 317; *Railroad Co.* v. *People,* 171 id. 525; *Bank* v. *Vandalia,* 57 Ill. App. 687; *Nashville* v. *Weiser,* 54 Ill. 245; *Sanderson* v. *LaSalle,* 57 id. 441; Cooley on Taxation, (2d ed.) 777, note 1.

The remedy of appeal to the statutory boards of review is cumulative, and not exclusive, and if those boards do not perform their duties a court of equity has jurisdiction. *Railroad Co.* v. *Hodges,* 113 Ill. 323.

If property is fraudulently valued at too high a rate a court of equity has jurisdiction to enjoin the collection of taxes. *Railroad Co.* v. *Cole*, 75 Ill. 594; *Porter* v. *Railroad Co.* 76 id. 596; *Railroad Co.* v. *Hodges*, 113 id. 323; *Railway Co.* v. *Johnson*, 108 id. 15.

The mere fact of an over-valuation does not, of itself, establish fraud, yet the over-valuation may be so excessive and made under such circumstances as to justify the conclusion that it was not honestly made and was known to be excessive. *Pacific Hotel Co.* v. *Lieb*, 83 Ill. 602; *Coal Co.* v. *People*, 157 id. 543.

A court of equity having once taken jurisdiction will retain the same to grant adequate relief. Bispham's Eq. (5th ed.) 58; *Lyle* v. *Little*, 33 N. Y. App. 282.

If the law provides for turning over part of the tax to the State there is no way of recovering it back, and therefore there is no remedy at law. Equity, in such event, has jurisdiction to restrain the collection of the whole tax. *Bank* v. *Douglass County*, 3 Dill. 298.

Statutes which cast the burden of taxation upon the property of the citizen, and which set in motion the machinery which may deprive the citizen of his property, must be strictly construed. Potter's Dwarris, rule 21.

Payment is made under compulsion when the tax is demanded by an officer armed with a warrant for its collection. *Bradford* v. *Chicago*, 25 Ill. 411; *Balfour* v. *Portland*, 28 Fed. Rep. 738; *Cattle Co.* v. *Commissioners*, 45 id. 323; *Detroit* v. *Martin*, 22 Am. Rep. 512.

FRANK L. SHEPARD, Assistant County Attorney, J. T. KRETZINGER, and J. J. ROONEY, (ROBERT S. ILES, County Attorney, of counsel,) for defendants in error:

The assessment of the property of others at less than the fair cash value will not affect the validity of the assessments upon complainant's property. *Merritt* v. *Farris*, 22 Ill. 303; *Spencer* v. *People*, 68 id. 510; *Insurance Co.* v. *Pollak*, 75 id. 299; *Union Trust Co.* v. *Weber*, 96 id. 346; *People* v.

175—25

*Lots in Ashley*, 122 id. 325; *Railroad Co.* v. *Stookey*, 122 id. 358; *Keokuk Bridge Co.* v. *People*, 161 id. 517; *Lowell* v. *Commissioners*, 9 L. R. A. 357.

Fraud is never presumed, and the mere charge of fraud in the pleadings has never been held sufficient to authorize a court to enjoin the collection of a tax. *Union Trust Co.* v. *Weber*, 96 Ill. 346; *Keokuk Bridge Co.* v. *People*, 161 id. 517; *Railway Co.* v. *People*, 119 id. 182; *Sterling Gas Co.* v. *Higsby*, 134 id. 568; *Coal Co.* v. *People*, 157 id. 543.

Complainant's remedy, if it had any cause of complaint, was before the board of review, and courts of equity have no jurisdiction to value and re-assess complainant's property or revise and reduce the assessment as made. *Railway Co.* v. *Frary*, 22 Ill. 34; *Cook County* v. *Railroad Co.* 35 id. 460; *Dunham* v. *Chicago*, 55 id. 357; *Spencer* v. *People*, 68 id. 510; *Swinney* v. *Beard*, 71 id. 27; *Porter* v. *Railroad Co.* 76 id. 561; *Adsit* v. *Lieb*, 76 id. 198; *People* v. *Iron Co.* 89 id. 116; *Felsenthal* v. *Johnson*, 104 id. 621; *Railroad Co.* v. *Hodges*, 113 id. 323; *Humphreys* v. *Nelson*, 115 id. 45; *Camp* v. *People*, 118 id. 224; *People* v. *Lots in Ashley*, 122 id. 297; *Stock Exchange* v. *Gleason*, 121 id. 528.

It was incumbent upon complainant to have availed itself of the ample and adequate remedy of the writ of *mandamus* to secure action on the part of the town board of review or the county board of review, or both, in order that its complaint, if any it justly had, should be heard and determined, and having failed to exhaust its legal remedy it cannot now invoke the aid of chancery. *Beidler* v. *Kochersperger*, 171 Ill. 563; *Kochersperger* v. *Larned*, 172 id. 86; High on Ex. Legal Rem. secs. 139, 140, p. 117; *Gibbs* v. *Commissioners*, 19 Pick. 298; *Bank* v. *Utica*, 4 Paige's Ch. 399.

The payment of the taxes by complainant after filing its bills of complaint to enjoin the collection thereof may properly be set up by pleas, which should be held good and the bills dismissed. 1 Daniel's Ch. Pl. & Pr. (4th ed.) 606; *Turner* v. *Robinson*, 1 S. & S. Ch. 4; *Sergrove* v. *Mayhew*, 14 Jurist, 158.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiff in error filed its bill in the superior court of Cook county against defendants in error, as county treasurer and county clerk of Cook county and town collector of the town of South Chicago, in that county, praying for an injunction restraining the collection of the excess of taxes extended against it above the sum of $22.13, which would be the amount of its taxes on an assessment of $200. Demurrers to the original bill were sustained. The bill was amended and demurrers to the amended bill were overruled, and the defendants were ruled to plead or answer. Thereupon the defendant the collector of the town of South Chicago filed his plea that there was no money due from complainant for taxes, and that he had not in his hands any warrant for the collection of a tax from it. The defendants the county clerk and county collector filed similar pleas. The abstract does not show any action on these pleas, but complainant, by leave of court, filed a supplemental bill reciting the previous proceedings, and alleging that afterwards, while the case was pending in court, the town collector, armed with his warrant, by means of threats to levy on and take possession of complainant's property, which he was about to execute, made a compulsory collection of the entire tax, $553.20, which complainant paid under protest, and that this compulsory payment was the sole defense alleged by the pleas. The demurrers previously filed were ordered to stand to this supplemental bill, and the court sustained them. Complainant elected to stand by its bills, and the amended and supplemental bills were dismissed for want of equity.

The facts appearing by the amended and supplemental bills, to which the demurrers were sustained and which were thereby admitted, were in substance as follows: The entire personal credits and effects, including cash on hand

or money in bank, owned by complainant on May 1, 1897, were of the fair cash value of $2000.   After the fourth Monday of June, and during the month of July of that year, complainant received a notice from Richard C. Gunning, the assessor of the town of South Chicago, that its property had been assessed at $20,000, whereupon it made and filed with the assessor a schedule of its taxable property and assets in the town.   The schedule showed a total value of $2000, and was received and accepted by the assessor.   Other personal property in the town was assessed at not to exceed ten per cent of its fair cash value, and at the rate at which such other property was assessed complainant's assessment would have been $200.   Upon receipt of the schedule the assessor promised to assess the property at ten per cent of the fair cash value therein stated, but without notice to the complainant and disregarding his agreement he assessed the property at $5000. This assessment was willfully made, as a part of a general plan to assess complainant and other selected persons, firms and corporations at a disproportionate and excessive rate, to extort money as a bribe for a reduction to the uniform rate applied to property in general, and persons who represented themselves to be emissaries of the assessor, and were charged to have been his representatives, offered to reduce the assessment to a satisfactory amount upon payment of money therefor.   On July 12, 1897, complainant filed with the county board an application for the revision of the assessment, and afterwards filed an amended application, and appeared before the board and introduced evidence in its support, which was heard by the county board and the application taken under advisement.   The county board neither granted nor denied the application.   It was referred to the finance committee, and that committee reported, as to this and other applications, that they had decided to make no recommendation except that the complaints be placed on file without prejudice to complainants' appeal to the

courts. This report was adopted by the board. Again, on September 27, 1897, the finance committee made another report to the board on the subject of equalizing valuations between the towns of Cook county, reciting, among other things, the existence of unfair assessments and inequality and injustice between individuals which it was impossible for the board to go into further than had been done, and containing a resolution that the assessments as returned by the assessor, with certain reductions made by the county board, should be declared to be the assessments for the year 1897. This report was also adopted by the board, and by this action the county board refused to act upon the application of complainant and to decide the question of complainant's grievance submitted to it under the statute. Complainant's application was then placed on file under this order that it should be without prejudice to its appeal to the courts. Taxes were assessed upon this fraudulent assessment to the amount of $553.20.

This case has been argued with five others, and counsel say that the six cases present substantially the same questions. We find, however, that there is an important difference between this case and the others, which renders a considerable part of the argument entirely inapplicable. This difference is, that in the other cases the property was assessed at less than its fair cash value, and as to them it is urged that the only real complaint is that the complainants therein were assessed at a higher rate than others. The argument that there is no just cause of complaint where the assessment does not exceed the fair cash value, although others are assessed at a less rate, cannot be applied to this case, since the fair cash value is $2000 and the assessment $5000. The question in this case is, whether complainant could have relief against an excessive assessment which was made with full knowledge of the facts and from a wrongful and fraudulent motive.

The law provides for a valuation of property by the assessor. The statute has also provided a board of review, and a further revision by the county board, for the protection of a tax-payer who may consider himself aggrieved by the opinion or judgment of the assessor. Value is largely a matter of opinion, and the opinions of these officers, when honestly exercised and applied upon a basis authorized by the law, cannot be reviewed or revised by the courts. The provisions of the statute are intended to be sufficient to reach the ends of justice between the tax-payers, and there is no appeal to the courts in mere matters of judgment. The assessor and boards for review are invested with the only power to fix valuations, and their decisions can only be questioned for fraud or want of jurisdiction. (*Chicago, Burlington and Quincy Railroad Co.* v. *Frary,* 22 Ill. 34; *Spencer & Gardner* v. *People,* 68 id. 510; *Republic Life Ins. Co.* v. *Pollak,* 75 id. 292; *Illinois Central Railroad Co.* v. *Hodges,* 113 id. 323; *St. Louis Connecting Railroad Co.* v. *People,* 119 id. 182; *Illinois and St. Louis Railroad and Coal Co.* v. *Stookey,* 122 id. 358; *Spring Valley Coal Co.* v. *People,* 157 id. 543; *Keokuk Bridge Co.* v. *People,* 161 id. 514.) But while it is not the duty of courts nor within the power of equity to supervise the honest judgments of statutory officers as to valuations, equity will interfere if the valuations are fixed from improper motives and in disregard of duty. The law authorized the assessor to exercise his judgment as to the value of property, but not to enter upon a system of pillage and plunder and to make use of his office to carry it out. Courts of equity have always relieved against fraud, and even the most solemn judgments are vitiated by it. If an assessor, under cover of his office, with intent to defeat the justice and uniformity required by the law or for the corrupt motive of obtaining a bribe, steps aside from his duty to accomplish such a purpose, the wrong inflicted may be redressed in equity and the assessment will be vitiated by the fraud. (Cooley on Taxation, 157,

526, 547; *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561; *Pacific Hotel Co.* v. *Lieb,* 83 id. 602; *Chicago, Burlington and Quincy Railroad Co.* v. *Cole,* 75 id. 591; *Illinois Central Railroad Co.* v. *Hodges, supra; Spring Valley Coal Co.* v. *People, supra.*)   It is the·rule that an excessive valuation, merely, does not establish fraud, but the attending circumstances may be such as to lead to the conclusion that it was fraudulently and dishonestly made. (*Pacific Hotel Co.* v. *Lieb, supra; Spring Valley Coal Co.* v. *People, supra.*)   The facts alleged in this case, which we must assume to be true, are, that the property of complainant was assessed at two and a half times its cash value as part of a general plan of dishonest spoliation, by which complainant and others were selected as victims from whom bribes might be obtained, and these bribes were solicited by representatives and emissaries of the assessor. The result of this scheme was a corrupt, fraudulent and excessive assessment of complainant's property, and it should be set aside, unless complainant is barred from relief in a court of equity by submitting to be sent away from the statutory board without a hearing and decision.

Complainant presented its grievance to the county board, and that board undertook to divest itself of the duty imposed upon it by law by resolving that it was impossible to go into inequalities and injustice against individuals and to hear and decide the case as required by law. Its committee made no recommendation except that the complaint be placed on file without prejudice to complainant's appeal to the courts. This report was adopted by the board and complainant was ordered to take its departure from that forum without a decision. This was no more or less than a refusal of the board to do its duty, and the law would have compelled its performance on the application of complainant.   It is said by Judge Cooley of the writ of *mandamus:* "A suitable case for the employment of the writ is where it is found necessary to

compel county commissioners to proceed to the hearing of an appeal from an assessment, where the hearing is of right under the statute." (Cooley on Taxation, 521.) Following this rule, in the recent cases of *Beidler* v. *Kochersperger*, 171 Ill. 563, and *Kochersperger* v. *Larned*, 172 id. 86, where there was similar conduct on the part of the county board of Cook county, it was held that *mandamus* would lie to compel a consideration of the complaint. Upon being sent away from the county board complainant did not pursue a remedy which the law affords and which is intended to be adequate for the relief of the tax-payer.

It has always been held that equity would enjoin the collection of a tax upon property exempt from taxation, and the question as to what effect the failure to follow the statutory remedy will have as to such a tax has been before the court several times. Section 97 of the Revenue act provides for a hearing and determination by the county board of the question whether property is exempt from taxation, and for an appeal from such decision, when the Auditor shall present the case to this court for final decision. In *Preston* v. *Johnson,* 104 Ill. 625, it was charged in a bill in equity that a tax was illegally levied upon property not subject to taxation. There had been an application to the county board, where it was claimed that complainants were denied a hearing, but it was held that there was an adequate remedy at law, and that if complainants were aggrieved by any action whatever of the board, their plain remedy was by an appeal. It was there said that the remedy through the county board of review and by appeal is adequate and exclusive. In *Peoria Fair Ass.* v. *People,* 111 Ill. 559, the association petitioned the county board to strike its lands from the assessment roll, but the board refused the petition and no appeal was taken. It was held that on application for judgment the defense could be made, and that it was only in case the question had been brought before this court and this court had passed upon it that the party

would be concluded, when the question would be *res judi-
cata.* The decision in *Preston* v. *Johnson* was afterward
explained in *Illinois Central Railroad Co.* v. *Hodges, supra,*
and it was said·that if a party selects the remedy pro-
vided by the statute he will not be allowed to abandon
it and then go into equity, but he may go into equity in
the first instance and have relief. It was held that the
remedy afforded by the statute is adequate and when se-
lected is exclusive, but before·the selection of a tribunal
it must be regarded as only affording a cumulative rem-
edy. In those cases, however, the statute then under
consideration gave a direct means of obtaining the judg-
ment of this court upon the question involved while there
is no appeal to a court on a question of over-valuation,
and the further material distinction was pointed out in
the latter case that an assessment of exempt property is
an act without jurisdiction.

Where property is exempt from taxation the owner
has a right to assume that the law will be observed, and
he is not required to take notice of its illegal assessment
nor to appear before the local tribunal, but·is protected
by the law and may resort to a court of equity for an
injunction. When complaint is made that the assessor
has over-valued the property, whether as a mistake of
judgment or from whatever motive, the situation is dif-
ferent. The property is subject to assessment, and it is
the duty of the owner to take notice of the assessment.
The valuation is not an act without jurisdiction or au-
thority, and if it is excessive the law intends that appli-
cation shall be made to the board. The statute embraces
every kind of grievance in the assessment, and whatever
its nature may be, the tax-payer may make his complaint
known and have a hearing. (*Felsenthal* v. *Johnson,* 104 Ill.
21.) It was proper for complainant to appeal to the
county board directly, as the assessment was made after
the fourth Monday of June. This remedy afforded by the
statute is intended to be sufficient for the relief of·the

tax-payer. The statute permits a grievance of the kind
complained of here to be heard, and presumably that
remedy will be adequate.

In *Spring Valley Coal Co.* v. *People, supra,* where fraud
was charged, the coal company applied to the town board
of review and secured reductions in some of the values,
and on appeal to the county board there was a hearing,
where it obtained still further reductions in value. It
was there said that, assuming the assessment to be fraud-
ulent, the coal company availed itself of the remedy given
by the statute and the decision made by the board of
supervisors was final and conclusive, and it must be re-
garded that the fraud, if any, that there was in the orig-
inal assessment was purged out of it. In that case the
presumption that the owner had obtained full relief was
indulged; but if he does not obtain relief as against a
fraudulent assessment we do not think that the statute
is the sole remedy. Fraud is a familiar ground of equity
jurisdiction, and if an assessment is fraudulent, equity
should relieve against it where the tax-payer has been
diligent in seeking the remedy which the statute affords.
In matters of revenue it is important that all questions
should be speedily settled, and the tax-payer should first
seek the remedy given by the statute, which it is presumed
will be sufficient. If he fails to do so it is his own neglect
or folly. The remedy against fraud is of an equitable
nature, and should be applied where the injured party
has been diligent for his own protection, but we think
it should be withheld in a case of this kind, where the
party has failed to insist upon a legal right which prob-
ably would have given full relief. The reports of the
committee to the board plainly show that in its judgment
assessments returned by some of the assessors, and com-
plained of, were unequal and unjust. The board merely
refused to do its duty and decide the cases. Although
complainant was denied a hearing before the county
board it had an adequate remedy to compel its perform-

ance. It is said that this remedy was insufficient, because it would not stay a collection of the tax while the proceeding was pending. If complainant was pursuing its legal remedy, and had not obtained it when a collection of the tax was attempted, an entirely different question would be presented. The mere fact that it might not get a hearing before an attempted collection of the tax would not justify an abandonment of its legal remedy and the resort to a court of equity.

The fact that the abstract does not show what was done with the pleas of defendants is immaterial, in the view taken of the case. The bill was filed and the court had acquired jurisdiction of the subject matter and the parties. Complainant had prayed for an injunction, which had not been secured, but after the court had acquired jurisdiction, if the collector enforced payment of the tax that fact would not constitute any defense to the bill, but the money was collected subject to the power of the court to compel the collector to refund it or submit to such other decree concerning it as might be equitable. A party filing a bill for an injunction may fail to procure a preliminary injunction, but any act after the court has acquired jurisdiction will be subject to the power of the court to compel a restoration of the status or to enforce such other relief as may be proper. Pleas making such a defense would be insufficient as answers to the amended bill, but the final decree of the court dismissing the amended and supplemental bills was correct, as we think, for the reason given, that complainant had not availed itself of the remedy secured to it by the statute to be relieved from the wrong complained of in the bill before seeking such relief in a court of equity.

The decree of the superior court will therefore be affirmed.                                      *Decree affirmed.*

Mr. Justice Magruder, dissenting.