## CITY RY. CO. v. BEARD, County Treasurer.

(District Court, S. D. Ohio, E. D.  June 5, 1922.)

No. 41.

1. **Constitutional law ⬅68(4)—Taxation is legislative, and not judicial, function.**

The power to assess property and levy taxes is legislative, and not judicial, and under the Constitution of Ohio such power is vested in the Legislature, and is exercised through agencies created by it for the purpose, such as assessors, county auditors, boards of equalization and of review, tax commissions, and the like, which do not act in any constitutional sense as courts.

2. **Taxation ⬅451—Transfer of assessment proceedings from tax commission to courts is not appellate proceeding.**

The transfer of assessment proceedings from the state tax commission to the courts, under Gen. Code Ohio, § 5611—2, by what is erroneously called in the statute a "petition in error." is not in fact an appellate proceeding, but a transfer from a body exercising legislative powers, which has ended its function, to a judicial tribunal, which acts, not alone upon the record made before the commission, but may receive new evidence.

3. **Taxation ⬅494(1)—Legality of assessment become justiciable, when legislative and administrative bodies have taken final action.**

When the Ohio state tax commission, which is vested with legislative powers with respect to assessment of certain classes of property, has taken final action on the valuation of property, the matter becomes justiciable, and resort may be had to a court of equity.

4. **Constitutional law ⬅67—Legislature may determine, within limits, what powers are judicial.**

Under the law of Ohio, based on the constitutional provisions vesting in the General Assembly the power to define the functions of the judicial department, a statute conferring a power on a court, to be exercised by it, is of itself of controlling importance, as fixing the judicial character of the power, and is decisive in that respect, unless it is reasonably certain that the power belongs exclusively to the legislative or executive department.

5. **Constitutional law ⬅74—Proceeding in court to determine validity of assessment is judicial.**

The power conferred by Gen. Code Ohio, § 5611—2, on the court of common pleas to determine de novo the legality of an assessment made by the state tax commission, is judicial in character, and the procedure prescribed by the statute is in all respects that of a suit in equity, with right of review by a higher court.

6. **Taxation ⬅608(5)—Equity jurisdiction to review assessment.**

Gen. Code Ohio, § 5611—2, providing for an appeal from an assessment made by the state tax commission to the court of common pleas, authorizes the court only to consider the valuation appealed from, and under the state Constitution it may not reduce it below its true money value of the property, and hence, when an alleged inequality of taxation, in violation of article 12, § 2, of the Constitution, requiring "taxing by uniform rule," results, not from overvaluation of his property, but from systematic undervaluation of other classes of property, the taxpayer is without adequate remedy at law, and the jurisdiction of equity may be invoked.

7. **Equity ⬅46—Remedy of law must be adequate to exclude jurisdiction.**

The remedy at law, which will deprive a court of equity of jurisdiction, must be a remedy as certain, complete, prompt, and efficient to attain the ends of justice as the remedy in equity.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Taxation ⟨⟩⟩608(5)—Intentional and systematic inequality in assessment is fraudulent.**

Assessment of the property of one owner at full value, though in compliance with the law, while other classes of property are intentionally and systematically undervalued, operates as a fraud on such owner.

**9. Taxation ⟨⟩⟩453—Failure of taxpayer to pursue statutory remedy does not bar equitable relief.**

Where the state tax commission has taken final action in the assessment of property, and the matter has become justiciable, the failure of the owner to file a petition in error under Gen. Code Ohio, § 5611—2, to transfer the cause to the court of common pleas, does not prevent him from maintaining a suit in equity for relief, under section 12075, and where the jurisdictional facts appear such suit may be brought in a federal court.

**10. Courts ⟨⟩⟩371(1)—Federal courts may enforce new statutory remedy.**

Where a state statute creates a new right or a new remedy, it may be enforced in the federal courts, either on the common-law or equity side of their docket, as the nature of the new right or new remedy requires.

**11. Taxation ⟨⟩⟩607—Payment by taxpayer of portion of excessive tax held not to bar relief in equity.**

That a taxpayer paid one-half of a tax levied on its property, alleged to be excessive and in violation of Const. Ohio, art. 12, § 2, *held* not to bar a suit in equity for relief from the excess tax, under Gen. Code Ohio, § 12075.

**12. Courts ⟨⟩⟩282(1)—Federal court has primary jurisdiction of suit involving constitutional question.**

Where by final action of the Ohio tax commission in making an assessment of property the matter has become justiciable, and it is alleged that the assessment is in violation of the rights of the owner under the federal Constitution, he is not obliged to pursue his statutory remedy in a state court, but may assert his rights at once in a federal court.

**13. Taxation ⟨⟩⟩608(5)—Rule of equality in taxation will be enforced.**

Where a state Constitution provides that all taxable property shall be assessed by a uniform rule at its true value in money, if that rule is not observed, and the basis of valuation is 60 per cent., or any per cent. less than 100, the courts will grant relief to those whose property is rated in excess of the adopted percentage.

In Equity. Suit by the City Railway Company against Martin L. Beard, County Treasurer. On motion for preliminary injunction. Granted.

McMahon, Corwin & Landis, of Dayton, Ohio, for plaintiff.

H. E. Mau and R. E. Hoskot, both of Dayton, Ohio, for defendant.

John G. Price, Atty. Gen., and Ray Martin and Clarence D. Laylin, both of Columbus, Ohio, for Ohio Tax Commission.

SATER, District Judge. The plaintiff, an Ohio corporation, seeks to enjoin the defendant, individually and as treasurer of Montgomery county, from the collection of a tax levied in the year 1920. Prior to the 1st of March in that year the plaintiff filed with the tax commission its annual report. The commission fixed a tentative value of $2,970,220 on its property. On a hearing based on plaintiff's written application the valuation was reduced to $2,938,850. A subsequent rehearing was had, and a further reduction in assessable value was refused. The county auditor in an appropriate manner charged against the plaintiff's per-

sonal property taxes to the amount of $74,521.56, and against its real estate not used in the daily operation of its business $388.12. In the following December plaintiff paid $37,454.84, being the first semiannual installment of the tax charged against it.

The charge is made that the tax commission, the county auditor and treasurer, and other taxing authorities, in assessing the plaintiff's property for taxation, apportioning the valuation among the several taxing districts of the county, certifying the assessment and apportionment to the county auditor, placing the same upon the tax duplicate, levying a tax thereon, and collecting and threatening to collect the same, although done for and in the name of the state and under color of their respective offices have acted illegally and made a void assessment, and, if the defendant is permitted to collect in full the tax so levied, its so doing will be in violation of plaintiff's constitutional rights. The reason assigned is that the tax commission, in making the assessment, did not proceed upon any proper principle of valuation, and adopted an improper mode of fixing the value of plaintiff's property, in that it did not apply the same rules and principles in estimating its valuation as were adopted and used with respect to other property in the state and county, but arbitrarily assessed its property at the sum above named, when its value did not exceed over $2,000,000.

It is further charged that for many years past there has been in the county a systematic general undervaluation of real estate for purposes of taxation, the average tax valuation thereof not exceeding 60 per cent. of its true value; that no reappraisement of real estate in the county has been made since 1910, although the aggregate value thereof has enormously increased; that the county commissioners and state tax commission have neglected and refused to increase and readjust assessments on such real estate on the tax duplicate, or to cause a reappraisement thereof to be made, although fully advised of the undervaluation and inequalities existing, but have knowingly and systematically permitted the condition complained of to continue and grow worse from year to year; that as a result of such failure to adopt and follow a uniform rule in assessing plaintiff's and other property in the state and county, and the systematic and general undervaluation of such other property, the tax rate in the county in the year 1920 is much higher than would have been required to produce the same revenue, had the real estate therein been assessed on the average at its true money value; and that this plaintiff is discriminated against, denied the equal protection of the law, and is about to be deprived of its property without due process of law, in violation of the Fourteenth Amendment to the federal Constitution and the Constitution and laws of Ohio.

Plaintiff asserts it has paid more taxes for the year 1920 than would have been charged against its property, had it been assessed by a uniform rule along with other taxable property in the county; that the tax is a lien and cloud upon the title to its real estate; and that, if the defendant is permitted to seize its property and enforce the collection of the tax, its operation as a public utility will be hampered, to its irreparable damage and injury and to the embarrassment of the public and without any adequate remedy at law. The prayer is for injunction

against the collection of the residue of the tax charged against it for the year in question.

The defenses interposed by the defendants are these: The plaintiff did not, in the county court of common pleas, institute proceedings to reverse, vacate, or modify the action of the tax commission, but paid the first half of the tax charged against its property, and sought no remedy until the other half became due, at which time the proper municipal and school authorities of the city of Dayton and the county of Montgomery had contracted large obligations on the faith of the tax duplicate, as plaintiff, by its acquiescence and delay, had allowed it to stand. The plaintiff, it is claimed, had an adequate remedy in the due course of law, which it failed to pursue and exhaust prior to invoking the jurisdiction of the court, without legal or equitable defense therefor, and so it is averred there is no equity in the bill of complaint, and its dismissal is asked. It is admitted that the tax on plaintiff's real estate is a cloud upon the title. The defendants have asked for a determination of the law on the issues tendered. As I understand their contention, they ask judgment on the pleadings, or as if on motion to dismiss. The issues must be determined by the law of Ohio.

[1] In Ohio the power to impose taxes in legislative, and is vested in the General Assembly by section 1, art. 2, of the Constitution. State v. Guilbert, 70 Ohio St, 229, 254, 71 N. E. 636, 1 Ann. Cas. 25; Board of Education v. McLandsborough, 36 Ohio St. 227, 232, 38 Am. Rep. 582; Toledo Bank v. Toledo, 1 Ohio St. 622, 701; Western Union Tel. Co. v. Poe (C. C.) 61 Fed. 449, 467; New York Life Ins. Co. v. Board of Commissioners (C. C.) 99 Fed. 846, 850. In 37 Cyc. 965, in speaking of the nature of a tax levy, it is said:

"It is not a judicial power, but is a legislative function, to be exercised only by the state or some inferior political division to which the state has delegated the power; and as a legislative function it cannot be delegated to administrative officers, although the further proceedings, such as extending, assessing, and collecting the taxes, are administrative."

The Legislature, for the assessment of property of individuals for the purposes of taxation, has provided agencies through which it operates, such as assessors, county auditors, boards of equalization and of review, tax commissions, and the like. Taxing officers and boards are not courts. Their actions are not judgments. Hagerty v. Huddleston, 60 Ohio St. 149, 165, 53 N. E. 960. In Musser v. Adair, 55 Ohio St. 466, 45 N. E. 903, involving additions to the valuations of property returned for taxation, it was said (55 Ohio St. 472, 473, 45 N. E. 905):

"Judicial powers are those conferred on judges as courts in the hearing and determination of questions arising in litigation between parties in actions pending before them. State ex rel. Harmon, 31 Ohio St. 250; De Camp v. Archibald, Sheriff, 50 Ohio St. 618, 624; Elliott, Appellate Procedure, § 8. * * * In short, judicial power is the power exercised by courts in hearing and determining cases before them or some matter incidental thereto, and of which they have jurisdiction. Such powers cannot be conferred on a ministerial officer."

Then follows a discussion of the power exercised by a county auditor as a taxing officer, with the conclusion that he is but a ministerial officer, and none other. In State v. Fassig, 5 Ohio App. Rep. 479, 484,

26 O. C. C. (N. S.) 81, 85, attention is directed to the creation of administrative boards having quasi judicial duties, among which are commissioners of counties, trustees of townships in relation to ditch and road cases, and county auditors in matters of taxation; but as to quasi judicial officers it is said in Bergman v. Kearney (D. C.) 241 Fed. 884, 897:

"It is impossible to say that all acts judicial in their nature are within the exclusive province of the judicial department of the government. Numerous instances may be cited in which nonjudicial officers have been required to exercise functions which in a sense are judicial, and yet statutes imposing such duties have been held to be constitutional. For instance, we have a railroad commission, an industrial commission, a public service commission, a tax commission, boards of equalization, and boards of county commissioners. Not one of these boards is a court, and yet under certain circumstances each is authorized to require the presence of witnesses, to listen to evidence, to hear argument, to ascertain facts, to apply existing law thereto, and to enter decisions seriously affecting the rights of individuals. Such judicial power exercised by nonjudicial officers is termed quasi judicial, to distinguish it from the judicial power, which devolves upon, and may be exercised only by, the courts."

The tax commission and other taxing authorities do not act in any constitutional sense as courts.

[2] The plaintiff has exhausted its remedy before the taxing officers. Under section 5611—1, Ohio G. C., the determination of the taxing commission became final and conclusive for the year 1920, unless reversed, vacated, or modified by the courts. By the terms of section 5611—2, the proceeding to obtain such reversal, vacation, or modification is by petition in error, filed in the court of common pleas, instituted by the person in whose name the property is listed for taxation, or by any other person or official authorized to file a complaint against any valuation or assessment under the provisions of section 5609; i. e., by any taxpayer. The petition in error must be filed within 30 days after notice is given by the tax commission of its determination to the person whose property is valued for taxation. The county auditor and the tax commission must be made defendants and served with summons, unless their appearance is entered. Upon demand made upon the tax commission, a certified copy of the order and the evidence in the proceedings had before it shall be made and forthwith filed with the clerk of the court. The court may call witnesses and consider other evidence, in addition to that embodied in the transcript. The prosecuting attorney is required to represent the county auditor. The right to prosecute error is given, and interested parties may intervene by cross-petition. The determination of the tax commission as to the value of property for taxation shall not be reversed, vacated, or modified, except upon clear and convincing evidence that the value of the property as determined by the tax commission is not the true value in money of such property.

The proceedings for the assessment of a tax are not, in any proper sense, hostile to the citizens. Cooley, Taxation, 595; Kelly v. Herrall (C. C.) 20 Fed. 364, 366, 367. Section 5611—2 provides, however, for an adversary proceeding. The constitutionality of a proper law transferring assessment proceedings from the taxing authorities to the

court is too well established to be controverted; but the term "petition in error," as employed in that section, is a misnomer. In no proper sense is the court proceeding one in error or on appeal. A court can only review the judgment of a *court* on a proceeding in error, which is in the nature of an appeal—in fact, invokes appellate jurisdiction. Musser v. Adair, 55 Ohio St. 470, 471, 45 N. E. 903. The remedy by writ of error is confined to review of judgments rendered in courts of record whose proceedings follow the course of common law, unless there is a special statutory provision to the contrary. 7 Ency. Pl. & Pr. 828; Baxter v. Columbia Township, 16 Ohio, 56, 58. In State v. Guilbert, 70 Ohio St. 659, 71 N. E. 636, 1 Ann. Cas. 25, Logan Branch Bank, ex parte, 1 Ohio St. 432, is quoted to the point that there can be no appeal except from one court to another. See, also, Zanesville v. Telegraph & Telephone Co., 64 Ohio St. 67, 83, 59 N. E. 781, 52 L. R. A. 150, 83 Am. St. Rep. 725, and U. S. v. Ferreira, 13 How. 40, 14 L. Ed. 42. In 2 Ency. Pl. & Pr. 25, 26, it is said that, to be appealable, a decision must be an exercise of judicial power. Where a judge or court acts in an administrative or ministerial capacity, no appeal will lie from such action.

The statute provides for a transfer as regards valuation of property for taxation from the taxing officers to the courts, but such transfer is technically neither a proceeding in error nor an appeal. An illuminating case is that of U. S. v. Ritchie, 58 (17 How.) U. S. 525, 15 L. Ed. 236. By an act of Congress provision was made for the appointment of a board of commissioners to settle private land claims in California, and for the transfer of cases decided by them to the District Court of the United States of that state by way of appeal. It was said (58 U. S. [17 How.] at page 533, 15 L. Ed. 236):

"The suit in the District Court is to be regarded as an original proceeding; the removal of the transcript, papers, and evidence into it from the board of commissioners being but a mode of providing for the institution of the suit in that court. The transfer, it is true, is called an appeal. We must not, however, be misled by a name, but look to the substance and intent of the proceeding. The District Court is not confined to a mere re-examination of the case as heard and decided by the board of commissioners, but hears the case de novo, upon the papers and testimony which had been used before the board, they being made evidence in the District Court, and also upon such further evidence as either party may see fit to produce."

That case and the principle therein announced were cited with approval in Grisar v. McDowell, 73 U. S. 363, 375, 18 L. Ed. 863, and Reese v. U. S., 9 Wall. (76 U. S.) 13, 19, 19 L. Ed. 541, and it is restated at considerable length along with other kindred cases in Bergman v. Kearney (D. C.) 241 Fed. 899–901.

[3] The tax commission, not being a court, but a chosen agency of the General Assembly to effectuate the legislative power of taxation, in so far as that power is committed to it by that body, and, having finally acted upon the valuation of the plaintiff's property, did legislation terminate, and was the justiciable stage reached when its final conclusion was announced, or does the statute (section 5611—2) impose a legislative or administrative duty on the courts? The state Supreme Court has had no occasion to construe, directly, at least, the statute in question or to answer the questions propounded. The nisi prius and appellate

courts have, however, held, if not directly, by necessary implication, that the legal remedies and legislative or administrative action are exhausted by the final determination of the tax commission, and that, the justiciable stage being then reached, resort may be had to a court of equity. Zettler v. Valentine, 24 Nisi Prius (N. S.) 78, 80, O. L. Bull. & Rep. May 22, 1922; Helmers v. McCarthy, 28 Ohio Ct. App. 396. The teachings of Hammond v. Winder, 100 Ohio St. 433, 126 N. E. 409, are in accord with the cases just cited, although the precise point was not decided. Winder did not avail himself of the opportunity given by the statute for relief (100 Ohio St. p. 446, 126 N. E. 409); but the implication is that, had he done so, section 12075 afforded a remedy, if the property held by him had been illegally taxed.

[4] Article 4, § 4, of the Ohio Constitution provides:

"The jurisdiction of the courts of common pleas, and of the judges thereof, shall be fixed by law."

Purely legislative power may not, however, be conferred on the courts. State v. Rogers, 71 Ohio St. 203, 73 N. E. 461; Zanesville v. Tel. & Tel. Co., 64 Ohio St. 67, 59 N. E. 781, 52 L. R. A. 150, 83 Am. St. Rep. 725, paragraph 7, syll. Such, also, is the necessary import of Fairview v. Giffee, 73 Ohio St. 183, 76 N. E. 865. In Ohio, the power of defining the functions of the judicial department of the government is vested in the General Assembly. In State v. Harmon, 31 Ohio St. 250, 258, it was said:

"The power of allotting to the different departments of government their appropriate functions is a legislative power, and, in so far as the distribution has not been made in the Constitution, the power to make it is vested in the General Assembly, as the depository of the legislative power of the state. True, the judicial article requires the judicial power of the state to be vested in the courts and in justices of the peace; but of what this judicial power consists, and what are its limits, are not defined. The jurisdiction of the courts and justices, except in a few specified cases, is required to be such as may be prescribed by law."

That case is authority for the statement (31 Ohio St. 259) that, although the exercise of the power of eminent domain vested in county and township boards and in corporations is not the exercise of judicial power within the meaning of the Constitution, nevertheless the exercise of the same power by the courts, if vested in them, is judicial, and that authority to try contested election cases is in its nature political or administrative, but when that power is conferred on a court it acts in the exercise of judicial authority, and the. following announcement in Re Cooper, 22 N. Y. 84, is quoted with approval:

"The principle * * * obviously is that, where any power is conferred upon a court of justice, to be exercised by it as a court, in the manner and with the formalities used in its ordinary proceedings, the action of such court is to be regarded as judicial, irrespective of the original nature of the power. The Legislature, by conferring any particular power upon a court, virtually declares that it considers it a power which may be most appropriately exercised under the modes and forms of a judicial proceeding."

In accord with the Harmon Case is Zanesville v. Tel. & Tel. Co., attention being particularly directed to the second, third, and fourth paragraphs of the syllabus, which in Ohio states the law of the case.

A seeming departure from the principle declared in the Harmon Case is found in State v. Rogers, 71 Ohio St. 203, 216, 217, 73 N. E. 461, in which a statute imposing upon the judges of the courts of common pleas the duty of fixing the compensation of county surveyors was involved. It was there said that the governmental powers have been severally distributed by the Constitution to the legislative, executive, and judicial departments of our state government, and that such fact clearly evinces a purpose that the powers and duties of each shall be separate from and independent of the powers and duties of the other co-ordinate branches, and that the distribution so made to the several departments by clear implication operates as a limitation upon and a prohibition of the right to confer or impose upon either powers that belong distinctively to one or the other co-ordinate branches. It would seem the color given to the opinion was probably derived from the views entertained by its author, for he dissented in the later case of Fairview v. Giffee, in which the correct interpretation is stated to be that (73 Ohio St. 188, 76 N. E. 866):

"While there is no clause in the Constitution of this state expressly distributing the powers of government, and none expressly restricting the executive and judicial branches, the legislative branch is expressly prohibited from exercising judicial powers, except as expressly conferred in the Constitution, and it is expressly empowered to define the jurisdiction of the courts. * * * So that when we come to the broad line of legislative power, and it is difficult to determine whether an act is wholly within the legislative domain or entirely within the judicial boundaries, the Constitution not having clearly defined its position, it is within the power and duty of the Legislature to determine to which department it shall belong. It results that, if the jurisdiction conferred by this act upon the court of common pleas and the judge thereof is not conclusively judicial in its character, it is nevertheless within the constitutional right of the General Assembly to impose the jurisdiction upon the court and judge, because it is in the nature of judicial power, and it is in aid of executing the express legislative will."

In the Rogers Case the occasion did not exist for any utterance as to the distribution of governmental powers, for the reason that the act was of a purely legislative character, and was obnoxious to and the case was controlled by article 2, § 20, of the state Constitution, which requires the General Assembly to fix the term of office and the compensation of county surveyors and other given officers.

An instructive case is Assur. v. Cincinnati, 14 Nisi Prius (N. S.) 433, affirmed without opinion by both the Court of Appeals and the Supreme Court of the state. The act involved authorized temporary repair of public ways and property destroyed by the floods of 1913, and provided that, in cases of the expenditure of $500 or more for such purpose, the court of common pleas should determine the necessity for such expenditure. The act was held to confer none other than judicial powers, and the rule was invoked, as in State v. Harmon, Fairview v. Giffee, and Zanesville v. Tel. & Tel. Co., that the Legislature has the right to determine by what departments of the government any act or power shall be exercised; that the legislative branch of the state government, when the Constitution does not distinctly define and distribute judicial powers, and when it is not clear whether an act is wholly the exercise of the legislative, executive, or judicial power, may determine by what department it shall be exercised, for the reason the Legislature is the

depository of the legislative power of the state, and that, in the absence of an express grant of power by the Constitution, it is within the power of the legislative department to determine the nature of that power. Clearly the Ohio rule is that a power conferred by·statute on a court of justice, to be exercised by it, is of itself of controlling importance, as fixing the judicial character of the power, and is decisive in that respect, unless it is reasonably certain that the power belongs exclusively to the legislative or executive departments.

[5] It cannot be successfully maintained that the power conferred by section 5611—2 belongs exclusively to either the legislative or the executive department, or is other than judicial. That the action in the court of common pleas possesses the usual characteristics of a case, an adversary proceeding, and is such in fact, appears from a consideration of the statute. If the proceeding were properly one in error, it would be heard on evidence previously taken only; but the case is to be tried out anew. The so-called petition in error would by any prudent lawyer embody a statement of his client's cause of action quite as completely as in any other recognized cases in equity. The petitioner is required to designate certain defendants, who are brought into court by the usual process, unless they voluntarily appear, as may be done in any other cause. Designated counsel are to represent them. New parties may intervene and plead, which from the usual course of court business also implies the services of the same or other counsel. Witnesses may be called and sworn. Evidence is heard according to established rules. A trial is had and a decision is rendered, determining property rights. Error may be prosecuted to a higher court as in any other case. The law having conferred a right and having authorized an application to a court of justice for the enforcement of that right, the·proceeding upon such right is judicial. Zanesville v. Tel. & Tel. Co.

To sustain the contention that the court acts in an administrative and not a judicial capacity, allusion is made by defendants to article 4, § 2, of the Constitution, which confers on the Supreme Court "such revisory jurisdiction of the proceedings of administrative officers as may be conferred by law." That provision does not apply. The Constitution confers no such power on courts of common pleas, and the application provided by section 5611—2 is not made to the Supreme Court.

[6] Article 12, § 2, of the Constitution, provides:

"Laws shall be passed, taxing by uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies or otherwise and also all real and personal property according to its true value in money."

Certain exceptions are then stated, but none of them are pertinent here. The Constitution contemplates that an exact equality of burden shall be imposed on all taxable property. Conceding that, due to the frailty of human judgment, such a result is unattainable, substantial uniformity is possible and should be obtained. In Wagoner v. Loomis, 37 Ohio St. 571, 580, it is said:

"There is nothing in the· Constitution which requires property to be taxed according to the same per cent. of its true value in money save only the 100 per cent."

283 F.—21

Taxing by a uniform rule is thus defined in Exchange Bank v. Hines, 3 Ohio St. 1, 15:

"What is meant by the words 'taxing by a uniform rule'? And to what is the rule applied by the Constitution? No language in the Constitution, perhaps, is more important than this; and to accomplish the beneficial purposes intended, it is essential they should be truly interpreted and correctly applied. 'Taxing' is required to be 'by a uniform rule'; that is, by one and the same unvarying standard. Taxing by a uniform rule requires uniformity, not only in the rate of taxation, but also uniformity in the mode of the assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation, and this equality of burden cannot exist without uniformity in the mode of the assessment, as well as in the rate of taxation. But this is not all. The uniformity must be coextensive with the territory to which it applies. If a state tax, it must be uniform over all the state; if a county, town, or city tax, it must be uniform throughout the extent of the territory to which it is applicable. But the uniformity in the rule required by the Constitution does not stop here. It must be extended to all property subject to taxation, so that all property may be taxed alike, equally—which is taxing by a uniform rule."

The power given to the court is by the statute (section 5611—2) so restricted that it can reverse, vacate, or modify the determination of the tax commission as to the value of property for taxation in case only it is shown by clear and convincing evidence that the value of property, as determined by the commission, is not the true value in money of such property. The only question transferred to the court for its consideration, and the only one which it can determine under the statute, is as to the true valuation of the property in money. The court cannot entertain an appeal or error proceeding on any other ground, because no other is named in the act. 37 Cyc. 1114, 1118; Dutton v. Pike County Board of Review, 188 Ill. 386, 58 N. E. 953; Keokuk, etc., v. Bridge Co., 185 Ill. 276, 56 N. E. 1049. In the Illinois cases just cited the court refused to consider the question of excessive valuation, for the reason the right of appeal from assessments was limited to the determination of what property was exempt from taxation. In C. & P. T. Co. v. County Com'rs, 116 Md. 220, 81 Atl. 520, a statute was involved that gave an appeal to the court from the taxing board on the grounds: (1) The appellant is not the owner of the property; and (2) the property is exempt. The court held that no right of appeal existed for excessive valuation.

If the Ohio courts were not constitutionally restricted to the 100 per cent. valuation rule, and were at liberty to apply merely the rule that property shall be taxed at a uniform value, whether that value be 100 or a lesser per cent., the court could affix the valuation placed by the taxing authorities on other property, as was done in Mineral Railroad & M. Co. v. County Com'rs, 229 Pa. 436, 78 Atl. 991; but the court has no power to revise or equalize the assessment roll generally of the taxing district or to review the assessments and decree them to be below the standard of actual money value, because it can consider only the valuation appealed from. Pons v. Board of Assessors, 118 La. 1101, 43 South. 891; 37 Cyc. 1117. If it should vacate or reverse the determination of the tax commission and send the matter back to that body for further action (which possibly may be done although the statute is silent as to that point), the 100 per cent. rule of valuation would still obtain.

But a person may properly claim and obtain an abatement of an assessment, if it is too high, or which, considered by itself, is not too high, if the assessments of others are relatively and purposely made too low. Cooley, Taxation, 1491; Potter v. O'Brien, 27 Ohio Ct. App. 577, 581 et seq.; Greene v. L. & I. R. R. Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Cummings v. Nat. Bank, 101 U. S. 153, 25 L. Ed. 903; Pelton v. Nat. Bank, 101 U. S. 143, 25 L. Ed. 901.

[7] The court may not, however, under section 5611—2, grant such relief, if the granting of it would require the reduction of the valuation of plaintiff's property below its true money value. The question as to what a court might do in the absence of such a statute as is here under consideration was stated in Wagoner v. Loomis, 37 Ohio St. 571, 582, but not decided. The remedy given by section 5611—2 is restricted, and a resort thereto would, if successful, yield but partial relief. It is not, therefore, an adequate remedy. The adequate remedy at law, which will deprive a court of equity of jurisdiction, must be a remedy as certain, complete, prompt, and efficient to attain the ends of justice as the remedy in equity. Williams v. Neely (C. C. A. 8) 134 Fed. 1, 10, 67 C. C. A. 171, 69 L. R. A. 232. Note, also, Mayor, etc., of Jersey City v. Central R. Co. of N. J. (C. C. A. 3) 212 Fed. 76, 128 C. C. A. 532, a case akin to that here considered. If the remedy at law be even doubtful, a court of equity will take cognizance of the suit. Davis v. Wakelee, 156 U. S. 680, 688, 15 Sup. Ct. 555, 39 L. Ed. 578; Union Pac. R. R. Co. v. Weld, 247 U. S. 282, 38 Sup. Ct. 510, 62 L. Ed. 1110.

[8] The amended petition makes a case of fraud. See Potter v. O'Brien, 27 Ohio Ct. App. at page 581, quoting with approval Taylor v. L. & N. R. Co. (C. C. A. 6) 88 Fed. 350, 374, 31 C. C. A. 537, as follows:

"If any board which is an essential part of the taxing system intentionally, and therefore fraudulently, violates the law, by uniformly undervaluing certain classes of property, the assessment by other boards of other classes of property at the full value, though a literal compliance with the law, makes the whole assessment, considered as one judgment, a fraud upon the fully assessed property. And this is true although the particular board assessing the complainant's property may have been wholly free from fault or fraud or intentional discrimination."

[9] The remedy provided by section 5611—2 is not exclusive. This action is planted under section 12075, formerly section 5848, R. S., which is as follows:

"Common pleas and superior courts may enjoin the illegal levy or collection of taxes and assessments, and entertain actions to recover them back when collected, without regard to the amount thereof; but no recovery shall be had unless the action be brought within one year after the taxes or assessments are collected."

That section was enacted May 1, 1856, to provide a remedy for relief against illegal taxes. The inadequacy of the relief theretofore accorded is set forth in Stephan v. Daniels, 27 Ohio St. 527. It was there said the act was a legislative recognition of a fundamental duty enjoined by the Constitution of the state; that, while the power to tax is essential to government, the duty of protecting the citizen from illegal exactions under the name of taxes and under the forms of law was not to

be forgotten or neglected. In Steese v. Oviatt, 24 Ohio St. 248, 253, it was said:

"Proceeding under the statute, the party complaining is not required to show a case of threatened irreparable injury, or the absence of a remedy by ordinary legal proceedings; but he must exhibit a case in which, upon the merits, he is entitled to the equitable relief demanded."

The act gave an enlarged and additional remedy to the taxpayer. Although the action under it is still equitable in its nature, a remedy is afforded by it which formerly he had only at law. The plaintiff is not required to make out a case, in every element, which would be necessary without it, to entitle him to equitable relief. It is sufficient if he shows the tax or assessment illegal. Tone v. Columbus, 39 Ohio St. 281, 301, 302, 48 Am. Rep. 438; Musser v. Adair, 55 Ohio St. at page 474, 45 N. E. 903. It applies to taxes on personal as well as on real property. Gerke v. Purcell, 25 Ohio St. 229.

The comprehensive character of the remedy afforded appears from decided cases. Kelly v. Cincinnati, 28 Ohio Ct. App. 376, involving a street assessment, points directly to the conclusion to be reached in the instant case. Section 3848 provides that any person objecting to an assessment shall file his objections, in writing, with the clerk of the municipality, within two weeks after the expiration of notice of such assessment, and thereupon the council shall appoint three disinterested freeholders of the corporation to act as an equalizing board. Sections 3849 and 3850 relate to the manner of their appointment and to the hearing by them of all objections to the assessment. The report of the board may be confirmed or set aside, and a new board appointed; but, whenever the council confirms the report of the board, its action is complete and final. The court said, at page 381:

"The property owners had an opportunity to object to this assessment under the provisions of section 3848, General Code, and should have done so, when the amounts might have been properly equalized and adjusted under sections 3849 and 3850, General Code. But their failure to file such objections does not prevent them from seeking relief under section 12075, General Code, where, as in this case, the provisions of the law relating to assessment in proportion to benefits have been so clearly violated."

It will be noted that the municipal council, an agency chosen by the Legislature to impose an assessment, as is the tax commission, had acted. Complaining property owners were given an opportunity to have the council's action reviewed, not by a court, it is true, but by an equalizing board. That the remedy to be pursued was before a board, and not in a court, is immaterial, for the principle involved is the same. The justiciable stage was reached when the council acted, just as it was reached when the tax commission finally valued plaintiff's property. The property owners were not compelled to submit their controversy to a board of equalization, but were held to be at liberty to proceed under section 12075. Precisely the same result was obtained in Cormany v. Cincinnati, 7 Ohio App. Rep. 179. See, also, Crane v. McCarthy, 30 Ohio Ct. App. 289; Hammond v. Winder, 100 Ohio St. 433, 445, 446, 126 N. E. 409; Manning v. Lakewood, 94 Ohio St. 85, 113 N. E. 661.

[10] The statute has uniformly been enforced by the federal courts, for the reason that, where a statute creates a new remedy, the federal courts will enforce that right, either on the common-law or equity side of their docket, as the nature of the new right or new remedy requires. Cummings v. Natl. Bank, 101 U. S. at page 157, 25 L. Ed. 903. Other cases in which the statute was considered and enforced are Meyers v. Shields (C. C.) 61 Fed. 713; Grether v. Wright, 75 Fed. 742, (C. C. A. 6) 23 C. C. A. 498; Aultman v. Brumfield (C. C.) 102 Fed. 7; Norwood v. Baker, 172 U. S. 269, 292, 19 Sup. Ct. 187, 43 L. Ed. 443.

The defense places reliance on Haff v. Fuller, 45 Ohio St. 495, 15 N. E. 479, and Lewis v. Laylin, 46 Ohio St. 663, 23 N. E. 288. It was said in Musser v. Adair, 55 Ohio St. at page 476, 45 N. E. 902, those cases must be confined to their particular facts. It will be noted that in both cases attention is directed to the fact that the proceedings in error were provided for by section 6708 R. S. (now section 12241, G. C.), in which event cases were heard on the record made before the township trustees and county commissioners respectively. The right to a rehearing de novo and on additional evidence did not exist.

[11] As to the objection made that plaintiff paid one-half of the tax levied prior to the bringing of its suit for injunction, see Cozad v. Hubbard, 18 Ohio Cir. Ct. R. 294. The action is brought within time.

[12] The justiciable stage having been reached when the tax commission finally acted, and legislative powers not having been conferred upon the common pleas court, plaintiff was not obliged to proceed in that court to obtain relief from action violative of the federal Constitution. It may assert its rights at once in the federal courts. Bacon v. Rutland R. R. Co., 232 U. S. 134, 34 Sup. Ct. 283, 58 L. Ed. 538.

[13] The constitutional rule is that all taxable property shall be assessed by a uniform rule at its true value in money. If that rule is not observed, and the basis of valuation is 60 per cent., or any per cent. less than 100, the courts will grant relief to those whose property is rated in excess of the adopted percentage. The rule of equality must prevail. Potter v. O'Brien, 27 O. C. A. at page 581; Greene v. L. & I. R. R. Co., 244 U. S. 499, 513–519, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E. 88. If a taxpayer's property is valued in excess of the rules adopted by the taxing authorities, he is illegally burdened; and, if the taxpayer is a public utility, the public that patronize it bears a part or the whole of that burden, unless its charging rate is unalterbly fixed.

The case stands for trial on the pleadings.